NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0272n.06
No. 16-6342

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | May 12, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| W. ALLAN JONES JR. and BATES BEND FARM, | ) | COURT FOR THE EASTERN |
| LLC, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendants-Appellants. | ) | |

Before: DAUGHTREY, MOORE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. In 1990, W. Allan Jones Jr. acquired a property interest in a right of way and, according to Jones, a river landing located on land owned by the Tennessee Valley Authority (TVA). Jones then built a series of private water-use structures—a launching ramp, seawall, dock, and boathouse—along the shore of what he determined was the landing. TVA thereafter informed Jones that the structures were unauthorized under the TVA Act, 16 U.S.C. § 831y-1, but Jones refused to remove them. TVA eventually sued Jones for trespass and for violations of the Act. The district court held a bench trial, found that Jones had violated the Act, and ordered him to remove the structures. We affirm.

In 1877, the Saulpaw family owned land on both sides of the Hiwassee River in Tennessee, along part of the river now known as Bates Bend. On the north side the Saulpaws operated a mill, and on the south side they paved a road that ran up to a point on the river directly across from the mill. The Saulpaws' customers used the road to transport grain to the mill. That

year, the Saulpaws sold the property on the south side of the river to W.F. Bates in fee simple, "except a Road fourteen [feet] wide which runs down to the landing at the river just below Saulpaw's Mill, which Road as it is now laid out and used by the patrons of Saulpaw's Mill is hereby expressly reserved and is not conveyed[.]"

Bates thereafter conveyed his property on the south side of the river to the Hambrights. In 1939, the Hambrights sold a strip of their land to TVA. The strip was 200 to 500 feet wide and stretched the entire length of their property on the southern bank of the river. The deeds from the Hambrights specified that the transferred land—known as Tract CR-1187—was "subject to such rights as may be outstanding in third parties to a 14 foot right of way, extending across the described land to the landing immediately below the former site of Saulpaw Mill." The Hambrights kept the remainder of their land until Jones bought it in the late 1980s. Jones then asked TVA for permission to construct private water-use facilities on the Hiwassee. TVA denied the request because, per TVA's 1939 deal with the Hambrights, TVA owned the riverfront land adjacent to Jones's property.

In 1990, Jones acquired by quitclaim deed the rights to the "Saulpaw Mill Right of Way and Landing." The deed conveyed to Jones "an existing 14 foot wide right of way leading from W. Allan Jones' farm known as the Bates Bend Farm on the Hiwassee River to the Landing known as the Saulpaw Mill Landing. . . . For prior title see deed from G.W. Saulpaw . . . to W.H. Bates dated December 1877[.]" Jones interpreted this conveyance to include rights to the "landing" itself, which according to Jones was a 2.5 acre piece of land bordering the river on the west end of Tract CR-1187. Jones thereafter asked TVA to verify his claim to the road and landing. In response, TVA conceded that it had "no right to prohibit [] Jones from using the right-of-way if he c[ould] verify his title to [it]." But TVA explained that, even if Jones had title

to the road, the right-of-way would not give him "the necessary landrights for TVA to approve private water use facilities on this right-of-way." *See* 18 C.F.R. § 1304.2.

Over the next 20 years, despite TVA's warning, Jones made a series of modifications to the area he regarded as the landing. He removed 200 to 300 feet of vegetation from the shoreline, dredged a channel for a launching ramp, constructed a seawall to combat erosion, attached a dock to the wall, and built an enclosed boathouse. TVA repeatedly told Jones both that it owned the land in question and that his activities were unauthorized under § 26a of the TVA Act, which prohibits the construction of any "dam, appurtenant works, or other obstruction, affecting navigation, flood control, or public lands or reservations" without prior TVA approval (in the form of a "§ 26a permit"). *See* 16 U.S.C. § 831y-1. TVA posted removal notices for the structures, but Jones refused to comply because he thought he owned the entire purported landing area in fee simple. TVA and Jones tried to resolve the dispute, but failed.

TVA brought this suit in 2016. The district court granted TVA partial judgment on the pleadings, finding that the 1877 deed reserved an easement to the 14-foot-wide road but reserved no property interest in the purported landing area. At trial, the district court determined that Jones had violated § 26a of the Act when he built the shoreline structures described above. The court issued a permanent injunction requiring Jones to remove them. This appeal followed.

We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Byrd*, 689 F.3d 636, 639 (6th Cir. 2012); *United States v. Green*, 532 F.3d 538, 546 (6th Cir. 2008). We review the district court's grant of an injunction for abuse of discretion. *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012).

Jones first argues that the district court should have considered parol evidence to determine the scope of his land rights under the 1877 deed and later conveyances. But whether

Jones held title to the road and landing is ultimately beside the point. Section 26a of the Act prohibits the construction of any "obstruction[] affecting navigation, flood control, or public lands or reservations" "across, along, or in the [Tennessee] river or any of its tributaries" unless "plans for such construction . . . [are] submitted to and approved by" TVA. 16 U.S.C. § 831y-1. "By way of example only, such obstructions may include boat docks, . . . boathouses, . . . boat launching ramps, . . . [and] shoreline stabilization projects[.]" 18 C.F.R. § 1304.1. Jones does not dispute that the Hiwassee River is a tributary of the Tennessee River, or that the structures in question were "obstructions" under the Act. Thus, regardless of whether Jones owned the road and purported landing area in fee simple, the Act still required him to get TVA's approval before building the dock, boathouse, launching ramp, and seawall. He did not, and thus the construction of those structures violated the Act.

Jones also argues that the district court abused its discretion by entering an injunction that requires him to remove the four structures. To obtain permanent injunctive relief, TVA needed to show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391 (2006). The district court found that TVA met its burden on all four factors.

Jones makes several arguments in response. First, he contends that TVA failed to demonstrate an irreparable injury because, he says, he could remedy the § 26a violations by obtaining the proper permits now. As the district court noted, however, "TVA's undisputed authority to regulate obstructions on the Tennessee River and its tributaries depends on universal

adherence to its promulgated regulations." D. Ct. Op. at 11 (citation omitted). "If others who own private property adjacent to the river and its tributaries chose to mimic [Jones's] disrespect . . . then TVA's regulatory scheme would be thoroughly compromised." *Id.* at 11-12 (citation omitted). That is all the more true here given that, for 20 years, TVA told Jones that his shoreline construction projects were not authorized under the TVA Act. The district court was therefore within its discretion to reason that it was too late for Jones to apply for a permit now.

Second, Jones argues that the injunction would cause him undue hardship, especially since TVA told him that it would deny his permit applications because he did not have a property interest in the purported landing. TVA requires applicants for a § 26a permit to have certain property rights in the land in question. 18 C.F.R. § 1304.2(a). And TVA told Jones that he could apply for a permit, but that TVA would deny it because, in TVA's view, Jones lacked the requisite property rights. *See id.* Even so, Jones could have applied for a permit and then appealed any denial. *See* 18 C.F.R § 1304.6. Instead, he chose to build the structures without a permit at all. Under these circumstances, any hardship to Jones was foreseeable rather than undue.

Third, Jones argues that he had the right to construct the structures under state law because they were "maintenance, repairs, or alterations necessary to preserve the use of the easement." Jones Br. at 34. But again § 26a provides that no "obstruction[] affecting navigation, flood control, or public lands or reservations shall be constructed, and thereafter operated or maintained across, along, or in" the Hiwassee River without prior TVA approval. 16 U.S.C. § 831y-1. Thus, Jones needed to apply for TVA approval to build the structures, even if they were within the scope of his easement.

Finally, Jones argues that the district court had no basis to require removal of the launching ramp because, Jones says, he merely added concrete to a stone ramp that was already there. To the contrary, however, the district court found that Jones built the entire ramp himself. D. Ct. Op. at 4. That finding was not clearly erroneous. In 1990, TVA received an anonymous complaint that someone had removed vegetation and earth from Tract CR-1187; an investigation revealed that Jones had "dredged a channel into the lake for a launching ramp," and the investigator said nothing about a pre-existing stone ramp.

The district court's entry of the injunction was not an abuse of discretion. The court's judgment is affirmed.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** I concur with the majority that the district court need not have considered parol evidence to determine the scope of Jones's land rights under the 1877 deed and later conveyances. However, I come to this conclusion for different reasons. "[I]t is a settled rule that in the absence of ambiguity or irreconcilable conflict in the provisions of a deed, parol evidence is not admissible to contradict, add to or explain the provisions of the deed." *Rolen v. Rolen*, 423 S.W.2d 280, 282 (Tenn. Ct. App. 1967). In this case, the 1877 deed unambiguously conveyed the property on the south side of the river in fee simple. The only exception was the "Road as it is now laid out and used by the patrons of Saulpaw's Mill," which was "expressly reserved and . . . not conveyed." R. 9-2 (Deed) (Page ID #54). Jones argues that the road includes the landing, but the deed stipulates that the road "runs down *to* the landing." *Id.* (emphasis added). "The word 'to', when used to express a boundary, ordinarily is a term of exclusion, and is always to be understood in that way, unless there is something in the conveyance which makes it manifest that it was used in a different sense." *Rolen*, 423 S.W.2d at 282. Nothing in the deed makes it manifest that "to" was used in any sense other than to express a boundary of the road. On the contrary, the landing indicates the road's terminus. As such, the landing is not part of the road.

Moreover, the deed, without the gloss of parol evidence, unambiguously designates the road as an easement. "When parties use terms such as . . . 'road' . . . in a deed as a limitation on the use of land, courts should construe such language as strong, almost conclusive, evidence that the interest conveyed is an easement." *Mitchell v. Chance*, 149 S.W.3d 40, 45 n.7 (Tenn. Ct. App. 2004). Of course, if the deed explicitly states that the road is conveyed in fee simple, courts respect that unambiguous language. *See Dobson v. Marion Cty.*, No. M2004-02154-COA-R3-CV, 2006 WL 1026422, at *7 (Tenn. Ct. App. Apr. 18, 2006). Here, the deed does not

explicitly convey the road in fee simple. Instead, the road serves as a limitation: it permits patrons of Saulpaw's Mill to access the river despite the general conveyance in fee simple. R. 9-2 (Deed) (Page ID #54). It is, therefore, an easement.

Because the landing was conveyed in fee simple, any unapproved construction on it is a trespass. To the extent that the structures were built on the easement and were not obstructions, Jones has not shown that the district court abused its discretion in finding that the structures were not improvements on the easement.