**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 15 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANTHONY DEAN CONLEY,

Defendant-Appellant.

No. 96-3255

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ALEX TRAVIS SCOTT,

Defendant/Appellant.

No. 96-3256

**Appeal from the United States District Court**
**for the D. Kansas**
**(D.C. Nos. 96-10013-03/ 96-10013-02)**

Steven K. Gradert, Assistant Federal Public Defender, Wichita, Kansas (David J. Phillips, Federal Public Defender, Wichita, Kansas with him on the briefs) for Defendant-Appellant Anthony D. Conley.

Jeff Griffith, Derby, Kansas for Defendant Appellant Alex T. Scott.

Michael G. Christensen, Assistant United States Attorney, Wichita, Kansas (Jackie N. Williams, United States Attorney, Wichita, Kansas with him on the briefs) for Plaintiff-Appellee United States.

---

Before **EBEL, LOGAN** and **BRISCOE**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Appellants Alex T. Scott ("Scott") and Anthony D. Conley ("Conley") (collectively "Appellants") pled guilty to charges of bank robbery and using or carrying a firearm during a crime of violence. At sentencing, each received a two-point enhancement of his respective offense level under § 3C1.2 of the Sentencing Guidelines for reckless endangerment during flight, based on Appellants' participation in a high-speed chase following the robbery. Appellants appeal the enhancement, asserting that their post-robbery flight did not constitute reckless endangerment. To the extent that their flight did constitute reckless endangerment, Appellants assert that they cannot be held responsible because they did not drive the getaway car.

Because the district court did not err in finding that the getaway and Appellants' role in aiding and abetting and causing the getaway rose to the level of reckless endangerment under the Guidelines, we affirm the court's enhancement of Appellants' base offense levels.

## BACKGROUND

On the morning of January 23, 1996, Appellants positioned themselves near the rear employees' entrance of the Missouri Pacific and Industrial Credit Union in Coffeyville, Kansas. When two employees arrived for work, Appellants forced them, at gunpoint, to let Appellants into the Credit Union. Appellants took over $40,000 in cash as well as two employees' purses. Appellants then ran to a waiting late-model sport utility vehicle driven by co-defendant Michael Iles ("Iles"). Appellant Scott sat in the front passenger seat, and Appellant Conley in the rear passenger seat. The car quickly left the scene.

Montgomery County Deputy Mark Shuler was on patrol a few miles from the crime scene. He spotted a vehicle matching the description of the one reported to be occupied by the Appellants. At the time Deputy Shuler spotted it, the vehicle was proceeding at a normal speed. Deputy Shuler followed the vehicle, turned on his emergency lights, and the vehicle pulled over. As Deputy Shuler began to exit his patrol car, the defendants' vehicle sped off. Deputy Shuler gave chase. The result was a high-speed pursuit, reaching speeds of up to 100 m.p.h., along a road that was both icy and damp.

During the course of the chase, Appellants' vehicle encountered two "rolling roadblocks" that had been set up by other police officers. Iles sped past the first roadblock. At the second rolling roadblock, the blocking police officer

swerved from side to side each time Iles tried to pass on one side or the other.  At one point when oncoming civilian traffic precluded the police officer from swerving, Iles sped up and drove toward the officer's car, forcing him to move out of the way to avoid collision.  According to the officer's testimony, this occurred at 45-50 m.p.h.  The three co-defendants were eventually apprehended at a stationary "blockade" roadblock.

Appellants pled guilty to bank robbery, in violation of 18 U.S.C. § 2113(a) & (d) and 18 U.S.C. § 2.  Appellants also pled guilty to using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1).  Iles, the driver of the getaway vehicle, was acquitted by a jury of all charges.  At Appellants' sentencing, the district court enhanced Appellants' base offense level by two points for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2.  In making its finding the district court relied on evidence presented at Iles' trial as well as on information contained in Appellants' Presentence Reports.  Each Appellant was ultimately sentenced to 108 months incarceration.  Appellants appeal the two-level enhancement imposed by the district court for reckless endangerment during flight.

## ANALYSIS

We review for clear error both the district court's determination that Appellants' post-robbery flight constituted reckless endangerment, and its determination that Appellants were responsible for that recklessness. See United States v. Burdex, 100 F.3d 882, 884 (10th Cir. 1996). The government bears the burden of proving factors enhancing a sentence by a preponderance of the evidence. See United States v. Rice, 52 F.3d 843, 848 (10th Cir. 1995). Evidence underlying a district court's sentence is reviewed by viewing the evidence, and inferences drawn therefrom, in the light most favorable to the district court's determination. See United States v. Cruz, 58 F.3d 550, 553 (10th Cir. 1995).

A. Reckless Endangerment

Section 3C1.2 of the Sentencing Guidelines provides that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by **2** levels." U.S.S.G. § 3C1.2. For purposes of this enhancement, "reckless" is defined in the same way as it is defined for involuntary manslaughter. U.S.S.G. § 3C1.2., comment. (n.2). The definition of involuntary manslaughter provides in relevant part:

> "Reckless" refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.

U.S.S.G. § 2A1.4, comment. (n.1). We note that the standard of care envisioned by the Guidelines is that of the reasonable person, not the reasonable fleeing criminal suspect.

The evidence before the court reveals that the defendants engaged in a high-speed car chase with law enforcement officials on an icy road, passed two rolling road blocks, and attempted to ram a police officer's vehicle. These actions involve a known risk of danger to others, and constituted a gross deviation from the standard of care that a reasonable person would have exercised in that same situation. See United States v. Gonzales, 71 F.3d 819, 836-37 (11th Cir. 1996) (§ 3C1.2 enhancement justified where defendant operated his vehicle, in reverse, at a high rate of speed on a residential street); United States v. Woody, 55 F.3d 1257, 1262,1274 (7th Cir. 1995) (enhancement justified where defendant evaded police at high speeds in addition to driving over a curb and causing one officer to dive out of the way); United States v. Chandler, 12 F.3d 1427, 1433 (7th Cir. 1994) (speeding and swerving through a residential area constitutes reckless endangerment); United States v. Sykes, 4 F.3d 697, 700 (8th Cir. 1993)

(failing to pull over and requiring police officials to force defendant's car off the road suffices to constitute reckless endangerment).

Not every flight from a crime scene, of course, will constitute reckless endangerment under § 3C1.2. There are situations in which a defendant might flee from law enforcement officers in a manner that does not recklessly endanger others. However, the facts of this flight clearly establish reckless endangerment.

Appellants argue that without some evidence of imminent danger of injury or death the district court could not find reckless endangerment. The speeds involved, the icy and wet condition of the roads at the time, as well as the apparent threat to ram one patrol car amount to gross deviation from the standard of care a reasonable person would have exercised in that situation. The district court's finding that Appellants' flight amounted to reckless endangerment was not clearly erroneous.

B. Passenger Responsibility for Driver's Reckless Endangerment

Although it is undisputed that Iles, and not Appellants, drove the getaway car during the high-speed chase following the robbery, the district court nonetheless held the Appellants responsible for Iles' reckless driving. Appellants argue that because they were mere passengers during the getaway, they cannot be held liable for Iles' recklessness.

Section 3C1.2 holds a fleeing defendant responsible for the reckless conduct of others only if he "aided or abetted, counseled, commanded, induced, procured, or willfully caused" that conduct. U.S.S.G. § 3C1.2 comment. (n.5). The sentencing court must make a specific finding, based on the record before it, that the defendant actively caused or procured the reckless behavior at issue. See United States v. Young, 33 F.3d 31, 33 (9th Cir. 1994) ("Not every escape escalates into reckless endangerment during flight . . . . [A]fter the Government's presentation of evidence supporting a section 3C1.2 enhancement, the district court must specify in the record its reasons for holding the passengers responsible for the driver's conduct.").

Mere reasonable foreseeability of the reckless behavior at issue is not enough by itself to support a § 3C1.2 enhancement. See United States v. Lipsey, 62 F.3d 1134, 1136-37 (9th Cir. 1995) (rejecting § 3C1.2 enhancement where district court relied solely on reasonable foreseeability of high-speed getaway by defendant-passenger who engaged in armed bank robbery with co-defendant-driver). However, an enhancement for reckless endangerment "may be based on conduct occurring before, during, or after [a] high-speed chase." Young, 33 F.3d at 33.

At Appellants' sentencing hearing the district court found that by planning a bank robbery that involved firearms, bank employees, and a waiting escape car, the Appellants were responsible for Iles' reckless behavior during the getaway.[1]

During the trial of Iles, a number of witnesses testified as to the behavior and ultimate capture of the getaway car. A witness who worked at a business near the Credit Union observed the getaway car waiting with its motor running, and testified that she heard "stones fly" as the car quickly left the building's gravel parking lot. Police officers involved in the ensuing chase testified that the car attained speeds of up to 100 miles an hour, that it passed one rolling road block then threatened to ram a police car in order to gain passage. The officers offered evidence that the second pass occurred within sight of civilian traffic. The officers also testified that road conditions were dangerously slick.

---

[1] The getaway driver, Iles, testified during his trial that he was an unwitting participant in the robbery and that his conduct in driving the getaway car was coerced by the Appellants. Iles testified that while both Scott and Conley were armed, he was not, and that Scott held a gun to his head and told him what to do. He also testified that when Scott and Conley came running out of the bank he offered to surrender the car to them, in response to which Scott ordered him to drive. However, the district court specifically found that the testimony of Iles was not credible. For this reason, we only consider the evidence that the district court considered -- witnesses' testimony elicited at Iles' trial and information included in Appellants' Presentence Reports -- to determine if the district court had before it sufficient evidence to support an inference that Appellants "aided, abetted, counseled, induced, procured, or willfully caused" Iles' reckless behavior while behind the wheel of the getaway car. In doing so, "we view the evidence and inferences drawn therefrom in the light most favorable to the district court's determination." Cruz, 58 F.3d at 553.

The behavior of the car is not, in and of itself, a sufficient basis for a finding that Appellant's procured the driver's reckless behavior. There was no credible evidence before the court of what transpired in the car during the getaway drive. Because the getaway car had tinted windows, the officers could not directly observe either Appellant's actions within the car. They could not see the expressions on the Appellants' faces nor hear what was being said in the car.

However, relevant to the determination of whether a defendant procured or encouraged the reckless behavior of another is evidence of the defendant's conduct prior to the act. See Young, 33 F.3d at 33. As the district court noted, the evidence shows that the Appellants consciously planned an armed robbery that would involve employee witnesses and a waiting car. These employees would have immediate access to telephones and alarm systems once the Appellants left the building. A quick getaway was an integral part of that plan. A quick getaway on a wet, icy morning necessarily includes the possibility, if not probability, of reckless endangerment of the public and police officers.      Appellants offer no evidence that they told Iles to slow down or stop the car during the chase.[2]

---

[2] The absence of any refutation or contradiction by Appellants does not decrease the Government's burden of proof, it simply allows the persuasive force of the Government's evidence  to go undiminished. There is no burden on Appellants to disprove the evidence against them. The burden is on the government to support the sentence enhancement by a preponderance of the evidence. See United States v. Rice, 52 F.3d 843, 848 (10th Cir. 1995).  Appellants' silence merely does not make it any less likely that they encouraged reckless driving on the part of Iles.

What's more, evidence contained in Appellants' Presentence Reports supports the district court's findings that they encouraged Iles' reckless behavior. Both Conley's and Scott's Presentence Reports indicate that the Appellants admit "trying to avoid arrest by trying to outrun authorities during the high speed chase following the bank robbery."

In addition to the evidence expressly recited by the district court, there is other evidence in the Presentence Reports and Iles' trial record that supports the district court's finding that these Appellants "aided, abetted, counseled commanded, induced, procured or willfully caused" Iles' reckless behavior. Looking at all the evidence before the district court, the evidence reveals that Appellants planned an armed bank robbery involving employee victims with access to alarm systems, which supports an inference that a rapid escape was part of Appellants' plan; the vehicle departed immediately and quickly, further corroborating that this was a planned activity; the Appellants were leaving the scene of a very serious crime, providing a motive to take desperate -- and reckless -- measures to flee and elude capture; Appellants both had guns and the driver did not, supporting the conclusion that Appellants had the ability to control the driver's behavior during the chase; Appellants conceded that they were "trying to outrun authorities" during the high speed chase. These facts are more than

sufficient to support the district court's findings that Appellants were responsible for Iles' reckless endangerment during flight.

## CONCLUSION

For the reasons stated above, the sentence enhancement imposed by the district court is **AFFIRMED**.