*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0243p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

　　　　　　　　　　*Plaintiff-Appellee,*

　　　　*v.*

TELLY BYRD,

　　　　　　　　　　*Defendant-Appellant.*

No. 11-6165

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:11-cr-44-1—Thomas B. Russell, District Judge.

Decided and Filed:  August 3, 2012

Before:  COOK and STRANCH, Circuit Judges; STAMP, District Judge.[*]

_____

**COUNSEL**

_____

**ON BRIEF:** Frank W. Heft, Jr., Jamie L. Haworth, OFFICE OF THE FEDERAL DEFENDER, Louisville, Kentucky, for Appellant.  Terry M. Cushing, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

_____

**OPINION**

_____

JANE B. STRANCH, Circuit Judge.  Telly Byrd argues that his sentence for bank robbery is procedurally unreasonable.  Specifically, he contends that the district court erred in applying a two-level enhancement under § 3C1.2 of the U.S. Sentencing Guidelines (U.S.S.G.) for reckless endangerment during flight.  For the reasons set forth below, we AFFIRM the judgment of the district court.

---

[*] The Honorable Frederick P. Stamp, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

1

**I. BACKGROUND**

In March 2011, Byrd drove Kawain Woods to a bank in Louisville, Kentucky. Woods entered the bank, jumped over the counter, and grabbed $2,150 from three teller drawers. Byrd honked the horn, and Woods returned to the Toyota Corolla.

Byrd and Woods got away before police arrived. But a witness followed them to a nearby apartment complex, where they got into a Mercury Mountaineer driven by Siddeeq Abdul-Jalil, Byrd's half brother. The witness—now following the second getaway car—called and told the police where the robbers were. Once the police arrived and tried to stop the Mountaineer, Abdul-Jalil sped away at over 90 miles per hour, running through several red lights. The police gave chase, and eventually Abdul-Jalil lost control of the car, crashing into an embankment. The three robbers then fled on foot, jumping several fences and running through several yards. Woods and Abdul-Jalil escaped, but Byrd was caught. The police found and arrested Woods and Abdul-Jalil some days later.

Byrd pled guilty to robbing the bank, *see* 18 U.S.C. § 2113(a). The Presentence Report (PSR) calculated a Guidelines offense level of 21. That included a two-level enhancement under Guidelines § 3C1.2 for recklessly endangering others during the bank-robbery flight (hereafter, the "reckless-endangerment enhancement"). It also included a two-level reduction under § 3E1.1(a) for Byrd accepting responsibility and an additional one-level reduction under § 3E1.1(b) because the probation officer anticipated that the government would file the required motion "stating that [Byrd] ha[d] assisted authorities in the investigation or prosecution of *his own* misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b) (emphasis added). But because

the government did not move for this one-level reduction, the Guidelines offense level was actually 22.**[1]**

Byrd's criminal history was extensive and produced a criminal-history category of IV. It included two prior convictions where Byrd and others were involved in flights similar to the flight in question. The first was a 1995 robbery conviction. Fleeing from that robbery, Byrd and his codefendants (which included another brother, Lorenzo Byrd) led the police on a high-speed chase that ended in the car crashing. The second was a 2003 conviction also related to robbery. Byrd and Abdul-Jalil fled in a vehicle with the police chasing them, refused to stop, and tossed two guns from the vehicle.**[2]**

Byrd's criminal-history category and offense level yielded a Guidelines range of 63-78 months' imprisonment. At sentencing, Byrd objected to the reckless-endangerment enhancement. He argued that he was merely a passenger in the Mountaineer and that more than reasonable foreseeability is required to impose the reckless-endangerment enhancement. The government instead had to prove that he directly or actively participated in the reckless flight itself, not just the bank robbery. Byrd contended there was no evidence that he had done so.

The district court agreed that neither reasonable foreseeability nor merely participating in the chase by virtue of being a passenger was enough to impose the enhancement. But it found that there was enough evidence to infer that Byrd "was responsible for or brought about some of the driver's conduct in some way." And it made specific factual findings discussed in more detail below supporting that conclusion.

---

**[1]**The government stated that it was not moving for this one-level reduction because Byrd did not give a statement to law enforcement about the criminal conduct of his accomplices. He instead admitted only his own criminal conduct. The problem with the government's reason is that the Guidelines on their face require only that the defendant assist "in the investigation or prosecution of *his own* misconduct." U.S.S.G. § 3E1.1(b) (emphasis added).

**[2]**The PSR actually says that "the defendants [Byrd and Abdul-Jalil] refused to stop and tossed two handguns from *their vehicles*." (Emphasis added.) This implies that Byrd and Abdul-Jalil each fled in their own vehicle. But the next sentence in the PSR refers to "*the vehicle* [that] had been reported stolen." (Emphasis added.) This could mean either that there was only one vehicle or that only one of the two vehicles had been stolen. The district court's remarks at sentencing show that it assumed there was just one vehicle. Because this factual finding by the district court is not clearly erroneous, we adopt it for purposes of this appeal. *See United States v. Battaglia*, 624 F.3d 348, 350 (6th Cir. 2010) (ruling that the district court's factual findings are reviewed under the clearly erroneous standard).

Accordingly, the court overruled Byrd's objection and applied the two-level enhancement for Byrd's reckless endangerment during flight.

The court disagreed with the government's reasons for declining to move to reduce Byrd's offense level by one for accepting responsibility under Guidelines § 3E1.1(b) and therefore varied down from an offense level of 22 to 21.  It sentenced Byrd to 57 months' imprisonment, which is the low end of the resulting Guidelines range.

This appeal followed.

## II. ANALYSIS

The issue on appeal is whether the reckless-endangerment enhancement should have been applied.  Although Byrd concedes that Abdul-Jalil drove recklessly, Byrd argues that the enhancement should not apply to him because he was a passenger and there was no evidence that he actively participated in the reckless flight.  He contends that his sentence is therefore procedurally unreasonable.

Criminal sentences must be procedurally and substantively reasonable.  *United States v. Stubblefield*, 682 F.3d 502, 510 (6th Cir. 2012).  We determine reasonableness under the deferential abuse-of-discretion standard.  *Id.*  One factor we assess when determining procedural reasonableness is "whether the district court properly calculated the Guidelines range."  *Battaglia*, 642 F.3d at 350-51.  "If the district court misinterprets the Guidelines or miscalculates the Guidelines range, then the resulting sentence is procedurally unreasonable."  *Stubblefield*, 682 F.3d at 510.  We review the court's legal interpretation of the Guidelines de novo and its factual findings under the clearly erroneous standard.  *Id.*  A factual finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made.  *United States v. Lucas*, 640 F.3d 168, 173 (6th Cir. 2011).

The district court's determination that Byrd was responsible for Abdul-Jalil's reckless driving is a factual finding.  *See United States v. Conley*, 131 F.3d 1387, 1389 (10th Cir. 1997) (using the clear-error standard to review the district court's

determination that the defendant passengers were responsible for the driver's reckless driving); *United States v. Lipsey*, 62 F.3d 1134, 1135-36 (9th Cir. 1995) (using the clear-error standard—which the court stated is applied to the district court's factual findings—to review "whether defendant engaged in reckless endangerment in the process of flight"). "And the government bears the burden to prove, by a preponderance of the evidence, that a particular sentencing enhancement applies." *Stubblefield*, 682 F.3d at 510.

Section 3C1.2 of the Guidelines states that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." A defendant is responsible for the reckless conduct of others under § 3C1.2 only if "the defendant aided or abetted, counseled, commanded, induced, procured, or wilfully caused" that conduct. U.S.S.G. § 3C1.2 cmt. n.5. To apply this enhancement to a passenger based on the driver's reckless conduct, the district court must specifically find that the passenger "was responsible for or brought about the driver's conduct in some way," and it must explain why. *United States v. Young*, 33 F.3d 31, 32-33 (9th Cir. 1994); *accord United States v. Chong*, 285 F.3d 343, 346 (4th Cir. 2002) (applying the enhancement to a passenger based on the driver's reckless conduct requires "some form of direct or active participation" in the reckless driving by the passenger); *United States v. Cook*, 181 F.3d 1232, 1235 (11th Cir. 1999) (same); *Conley*, 131 F.3d at 1390 (same); *United States v. Lipsey*, 62 F.3d 1134, 1136 (9th Cir. 1995) (same). The court can infer that the passenger caused or encouraged the reckless driving "based on conduct occurring before, during, or after a high-speed chase." *Conley*, 131 F.3d at 1390 (brackets and internal quotation marks omitted); *accord id.* at 1391. That a reckless getaway is a reasonably foreseeable outcome of the underlying crime, however, "is not enough by itself to support [the] enhancement." *E.g., Conley*, 131 F.3d at 1390.

At the sentencing hearing in the present case, the district court found that the record established "more than just a reasonable foreseeability of reckless conduct to get away." The court focused on several facts. Byrd was the initial getaway driver.

He drove Woods to the bank to rob it, honked his horn to signal Woods to get back in the car, and then drove to the waiting Mountaineer so they could switch vehicles. Byrd got in the Mountaineer and continued to participate in the escape by car. After the high-speed chase ended with Abdul-Jalil crashing the Mountaineer, Byrd continued to flee on foot. The district court stated that these facts are enough to support the enhancement. But it also observed that Byrd had a record of similar vehicular flights from the police. In 1995, he participated in a high-speed chase that ended in the suspects crashing the car; in 2003, Byrd and Abdul-Jalil fled in a vehicle with the police chasing them, refused to stop, and tossed two guns from the vehicle.

The court did not clearly err in inferring that Byrd caused or encouraged Abdul-Jalil's reckless flight for purposes of § 3C1.2, and it therefore properly applied the enhancement. Byrd vociferously protests that there is no direct evidence that Byrd caused or encouraged Abdul-Jalil's reckless driving. True enough, but direct evidence is not required. The necessary conduct by Byrd—namely, that he caused or encouraged the reckless driving—may be inferred from all the circumstances surrounding the robbery and flight. *Conley*, 131 F.3d at 1390-91. In *Conley*, the Tenth Circuit affirmed imposing the reckless-endangerment enhancement despite there being no direct evidence that the defendant passengers encouraged or caused the reckless driving. *Id.* at 1391. The district court had inferred the passengers' responsibility for the driver's reckless conduct, and the Tenth Circuit concluded that the record was "more than sufficient to support [those] findings." *Id.*

The record in the present case similarly shows that the inferences drawn by the district court are not clearly erroneous. As the Ninth Circuit observed, "inferences may be drawn . . . when several bank robbers jump into a getaway vehicle and drive away attempting to elude arrest, and thereafter continue to flee when the vehicle stops." *Young*, 33 F.3d at 33. Though the Ninth Circuit in Young acknowledged that these inferences are "not conclusive," *id.*, that does not undermine our holding. The Ninth Circuit was not holding that these inferences were insufficient to support applying the reckless-endangerment enhancement. Rather, the court was explaining why it is

imperative for a district court to provide specific findings supporting its decision to apply the enhancement. *Id.* ("Without the requisite findings, we cannot adequately determine whether the district court committed clear error in applying the enhancement to the defendant's conduct."). Because the inferences are not conclusive—which is another way of saying other inferences could be drawn from those same facts—the district court must tell the reviewing court that it drew them. Unlike the district court in *Young*, the district court in the present case did tell us why it applied the enhancement, and its reasoning is not clearly erroneous.

Byrd consciously planned and participated in a robbery that would entail employee witnesses who likely had access to alarms. Leaving the bank quickly was therefore likely part of the plan. This inference is supported by Byrd honking the horn to signal Woods to hurry up and leave the bank. Byrd then drove to the waiting Mountaineer and willingly got in, continuing to participate in the escape. Byrd's continued participation in the flight—which up to this time had been nonreckless—does not necessarily establish the crucial fact: namely, that he *actively* participated in the ensuing reckless flight. But the direct evidence of his active participation in the nonreckless portion of the flight are facts that the district court can—and did—consider in making its ultimate finding. Once the reckless, high-speed chase ended, Byrd continued to flee on foot.

All of these facts show Byrd's desire to evade capture, from which one could infer that Byrd encouraged or supported Abdul-Jalil's reckless driving, which was also motivated by a desire to escape. Indeed, Byrd and the others were attempting to successfully rob a bank—a very serious crime—providing them with a "motive to take desperate—and reckless—measures to flee and elude capture." *Conley*, 131 F.3d at 1391. That the reckless flight did not happen until Abdul-Jalil drove the Mountaineer is not dispositive because there were no police present to give chase when Byrd fled the bank in the Corolla. Under these circumstances, Byrd driving nonrecklessly makes sense because reckless driving would call attention to the robbers at a time when it appeared to them that they had made a clean getaway.

Finally, there was evidence that Byrd had participated in reckless flights in the past. Though the evidence was summary and did not specify whether Byrd drove the cars in these chases or otherwise encouraged or caused the driver's conduct, the district court presumed that this evidence made the inference that Byrd encouraged or caused Abdul-Jalil's reckless driving at least a little more plausible. Under all the circumstances here, it was not clearly erroneous to infer that Byrd's participation in yet another reckless flight is more likely to be active than passive, even if his exact role in the prior flights is unknown.

Based on the record, the district court's finding that Byrd was responsible for Abdul-Jalil's reckless driving, and the court's reasoning underlying this finding, we conclude that the court did not clearly err in making this finding. Therefore, the reckless-endangerment enhancement imposed by the court was not improper.

### III. CONCLUSION

For the above reasons, we AFFIRM the judgment of the district court.