# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2021

Lyle W. Cayce
Clerk

No. 19-30225

---

United States of America,

*Plaintiff—Appellee*,

*versus*

Jerome Kieffer; Armstead Kieffer,

*Defendants—Appellants*.

---

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CR-114-2

---

Before Haynes, Higginson, and Oldham, *Circuit Judges*.

Haynes, *Circuit Judge*:

Jerome Kieffer and his father, Armstead Kieffer, appeal their convictions for offenses relating to two armored truck robberies. For the reasons set forth below, we AFFIRM the judgments of the district court.

## I.    Background

Jerome, Armstead, and a third man, Deltoine Scott, were charged with multiple offenses in connection with an October 11, 2015 armed robbery of an armored truck as it was servicing a Chase Bank ATM in New Orleans, and a May 31, 2017 attempted robbery of an armored truck as it was servicing

a Campus Federal Credit Union ATM in New Orleans. According to the Government, Jerome and Scott were the gunmen during both robberies while Armstead knowingly received money from the 2015 robbery and acted as a lookout during the 2017 robbery. Jerome and Armstead were tried together, while Scott, who had entered into a plea agreement with the Government, testified against them. Besides Scott, the Government called numerous other witnesses and presented over 2800 pages of exhibits, including photographs, surveillance footage, and cell phone data.

After a five-day trial, the jury convicted Jerome of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371; armed bank robbery in violation of § 2113(a) and (d) and § 2; brandishing a firearm in furtherance of a crime of violence in violation of § 924(c)(1)(A) and § 2; attempted armed bank robbery resulting in death in violation of § 2113(a), (d), and (e) and § 2; and causing death through use of a firearm in violation of § 924(j)(1) and § 2. Armstead was convicted of conspiracy to commit bank robbery in violation of § 371; attempted armed bank robbery resulting in death in violation of § 2113(a), (d), and (e) and § 2; causing death through use of a firearm in violation of § 924(j)(1) and § 2; making a material false statement to a grand jury in violation of § 1623; and possession of a firearm by a felon in violation of § 922(g)(1) and § 924(a)(2).

During the trial, the district court permitted the jurors to submit written questions for the witnesses. Once submitted, the district court would modify the questions to comply with the Federal Rules of Evidence, and then would pose them directly to the witnesses. During the first two days of the trial, the district court did not permit counsel to review the jurors' questions prior to asking them. However, after repeated objections from defense counsel, the district court agreed to allow counsel to review and object to questions prior to asking them. Over the course of the trial, the jurors

submitted roughly fifty questions to the district court, of which approximately twenty-one were actually posed to witnesses.

Prior to sentencing, Jerome and Armstead filed separate motions for a new trial on the basis that the district court erred in its handling of the jurors' questions. The district court denied these motions and sentenced Jerome and Armstead to life imprisonment. Both timely appealed.

## II.    Discussion

On appeal, Jerome and Armstead each argue that there was not sufficient evidence to support their convictions and that the district court erred by denying their motion for a new trial. Additionally, Jerome has filed a letter under Federal Rule of Appellate Procedure 28(j), asserting that his conviction under § 924(c) for brandishing a firearm in furtherance of a crime of violence is invalid in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Reece*, 938 F.3d 630 (5th Cir. 2019), which were decided after the judgment was entered in this case. None of their arguments prevail.

### A.    Sufficiency of the Evidence

Jerome and Armstead preserved their challenges to the sufficiency of the evidence by moving for a judgment of acquittal at the close of the Government's case, which was the close of all evidence.[1] We review their preserved claims de novo, according "substantial deference to the jury verdict." *United States v. Suarez*, 879 F.3d 626, 630 (5th Cir. 2018). Under this standard, we "must affirm a conviction if, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[1]  Both defendants did, indeed, make a general Rule 29 motion. Jerome's attorney stated: "We would move on behalf of Jerome Kieffer Rule 29." Armstead's attorney then stated: "Judge, we would likewise move on the rule 29 on behalf of Armstead."

beyond a reasonable doubt." *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc).

Jerome and Armstead both contend that their convictions impermissibly depend on Scott's unreliable testimony. Specifically, Jerome asserts that Scott's testimony is the only evidence that identifies him as a participant in the 2015 and 2017 robberies. Similarly, Armstead argues that there is no evidence apart from Scott's testimony supporting his convictions for conspiracy to commit bank robbery, attempted armed bank robbery resulting in death, and causing death through use of a firearm.

Assuming arguendo that these convictions depend on Scott's testimony, a conviction "may be sustained if supported only by the uncorroborated testimony of a coconspirator . . . unless the testimony is incredible or insubstantial on its face." *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994); *see also United States v. Garcia Abrego*, 141 F.3d 142, 155–56 (5th Cir. 1998) (explaining that such testimony is sufficient "so long as it does not defy the laws of nature or relate to matters that the witness could not have observed"). Whatever the problems with Scott's credibility, his account was neither physically impossible nor outside his powers of observation; the jury decides credibility of witnesses, not the appellate court. *See United States v. Delgado*, 256 F.3d 264, 273–74 (5th Cir. 2001) (noting that "we do not evaluate the weight of the evidence or the credibility of the witnesses"). Thus, Scott's testimony alone was sufficient to support the Kieffers' convictions.

Armstead also challenges the sufficiency of the evidence supporting his conviction for making a false material statement. The basis for this conviction was Armstead's statement to the grand jury that he did not know Jerome's whereabouts at 4:30 in the afternoon of May 31, 2017. To establish this statement's falsity, the Government relied on evidence of a seven-

No. 19-30225

minute-and-forty-second phone call between Armstead and Jerome at approximately 4:30 p.m. on May 31. On appeal, Armstead argues that there is insufficient evidence to establish that he intentionally misled the grand jury because it is plausible that he truthfully did not remember this phone call. But when viewed in the light most favorable to the jury's verdict, the evidence is sufficient to sustain the conviction, especially as Armstead testified before the grand jury little more than one month after the phone call took place.[2]

Finally, Armstead challenges his conviction for being a felon-in-possession of a firearm based on *Rehaif v. United States*, in which the Supreme Court held that, to obtain a conviction under § 922(g), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belong to the relevant category of persons barred from possessing a firearm." 139 S. Ct. 2191, 2200 (2019). Armstead contends that there was no evidence showing that he knew he was a felon when he possessed the firearms.[3] While an argument can be made that Armstead's general objection

---

[2] Armstead also argues that his statement was not material because it was made on the same day that the Government filed a superseding indictment and thus did not influence the tribunal. Yet, as "[a]ctual influence is not required" for a statement to be material, this argument is unavailing. *United States v. Abrahem*, 678 F.3d 370, 374 (5th Cir. 2012).

[3] Armstead additionally contends that there was insufficient evidence to establish that he possessed the relevant firearms. "Possession of a firearm may be actual or constructive, and it may be proved by circumstantial evidence." *United States v. Meza*, 701 F.3d 411, 419 (5th Cir. 2012) The jury may find "constructive possession" if the defendant had "dominion or control over the premises in which the item is found." *Id.* In turn, "[d]ominion or control over the premises may be shown by the presence of the defendant's personal belongings in the house." *Id.* In this case, the relevant firearms were found in Armstead's residence, in a bedroom containing his cell phones and identification cards. Further, there was no evidence suggesting that anyone besides Armstead occupied the residence. Consequently, there was sufficient evidence for a reasonable jury to find that Armstead constructively possessed the firearms.

and failure to raise this specific argument below results only in plain error review, we conclude that his argument fails even under de novo review.[4]  *See United States v. Staggers*, 961 F.3d 745, 754 (5th Cir. 2020) (reviewing de novo a sufficiency of the evidence claim based on *Rehaif* where defendants made general sufficiency objections), *cert. denied*, 141 S. Ct. 388 (U.S. 2020) (mem.); *cf. United States v. Huntsberry,* 956 F.3d 270, 282 (5th Cir. 2020) (concluding that particularized objection on another ground waived the *Rehaif* argument).  Because Armstead stipulated to being a felon at trial, there was sufficient evidence to establish that he knew he was a felon under either standard of review.  *See Staggers*, 961 F.3d at 756–57 (explaining that "[s]ufficiency is measured against the *actual* elements of the offense, not the elements stated in the jury instructions" and holding that the defendant's stipulation to felon status was enough to sustain his § 922(g)(1) conviction under *Rehaif*).

### B.    Motions for a New Trial

As they did below, Jerome and Armstead contend that a new trial is warranted because the district court posed jurors' questions to witnesses without first allowing counsel to review the questions.  They also appear to argue that the sheer number of juror questions suggests that the jurors abandoned their role as neutral fact-finders.  We review a district court's denial of a motion for a new trial for abuse of discretion.  *United States v. Hoffman*, 901 F.3d 523, 552 (5th Cir. 2018), *cert. denied*, 139 S.Ct. 2615 (2019) (mem.).  A procedural defect may justify a new trial if it "caused a miscarriage of justice."  *Id.*

---

[4]  Because Armstead's argument fails even under the least deferential standard of review, we conclude it is unnecessary to further address which standard of review is proper here.

District courts have discretion over "[t]he proper handling of juror questions." *United States v. Callahan*, 588 F.2d 1078, 1086 n.2 (5th Cir. 1979). When exercising their discretion, courts must be cognizant of the risks of permitting such questions, including that "jurors can find themselves removed from their appropriate role as neutral fact-finders," and that "there is a certain awkwardness for lawyers wishing to object to juror-inspired questions." *United States v. Collins*, 226 F.3d 457, 461 (6th Cir. 2000); *cf. United States v. Ajmal*, 67 F.3d 12, 14–15 (2d Cir. 1995) (holding, in an egregious case, that the district court abused its discretion by repeatedly encouraging jurors to pose questions to witnesses, including the defendant, thereby "altering the role of the jury from neutral fact-finder to inquisitor and advocate"). Ultimately, "whether juror questioning constitutes an abuse of discretion is a factually intense inquiry requiring a case-by-case analysis." *United States v. Richardson*, 233 F.3d 1285, 1291 (11th Cir. 2000).

In *Callahan*, we found no abuse of discretion where the district judge asked a single written question submitted by a juror as to a factual matter after determining that the question was not "legally improper," but did not provide counsel an opportunity to object outside the presence of the jury. 588 F.2d at 1086. Because the district court here followed an identical procedure, we cannot say that its method was erroneous.[5] *See Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (noting that "one panel . . . may not overturn another panel's decision, absent an intervening change in the law,

---

[5] Several of our sister circuits require district courts to provide counsel with an opportunity to review and object to juror questions outside the presence of the jury. *United States v. Rawlings*, 522 F.3d 403, 408 (D.C. Cir. 2008); *accord United States v. Brown*, 857 F.3d 334, 340–41 (6th Cir. 2017); *Richardson*, 233 F.3d at 1290–91; *United States v. Hernandez*, 176 F.3d 719, 726 (3d Cir. 1999); *Ajmal*, 67 F.3d at 15. Such a procedure helps avoid undue prejudice to any of the parties that could result in a determination that the district court abused its discretion.

No. 19-30225

such as by a statutory amendment, or the Supreme Court, or our *en banc* court"). Further, although the jurors submitted many questions in this case, a large volume of questions does not by itself justify a new trial. *See DeBenedetto ex rel. DeBendetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 517 (4th Cir. 1985) (holding that the defendants were not prejudiced by the district court's allowance of ninety-five juror questions because the court could "perceive no bias in any of the questions").

Nonetheless, district courts should consider following an established procedure such as that set forth by the D.C. Circuit in *United States v. Rawlings*:

> First, the court should inform counsel in advance that juror questions will be allowed, should require that all juror questions be submitted in writing, should review them with counsel out of the presence of the jury (evaluating objections, if any) and then, if it finds the question proper, should itself ask the question of the witness. In addition, before any questioning begins, the court should instruct the jurors about the function of the questioning procedure in clarifying factual (not legal) issues and should direct them to remain neutral and, if the judge fails to ask a particular question, not to take offense or to speculate as to the reasons therefor or what answer might have been given. Then, after a particular witness has responded to the questions, the court should permit counsel to re-question the witness. We also think it prudent to repeat the instructions in the closing charge.

522 F.3d 403, 408 (D.C. Cir. 2008) (citations omitted).

Regardless of the specific procedure used by the district court, the key question here is whether any inappropriate questions were asked or any prejudice to the defendants ensued. Importantly, despite numerous pages of briefing on this issue, *not one single question* is identified by either defendant as causing prejudice. After reviewing all of the questions submitted by the

8

jurors, we see no indication that any juror abandoned his or her role as a neutral fact-finder. Consequently, we conclude that the district court did not abuse its discretion in denying the Kieffers' motions for a new trial.

### C.    § 924(c) Conviction

Under § 924(c)(1)(A), the use of a firearm during a "crime of violence" is prohibited. In turn, a "crime of violence" is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *see Davis*, 139 S. Ct. at 2323–25, 2336 (ruling that the alternative definition at § 924(c)(3)(B) is unconstitutionally vague). Under this standard, bank robbery in violation of § 2113(a) is a crime of violence, but conspiracy to commit bank robbery in violation of § 371 is not. *Reece*, 938 F.3d at 636; *see also United States v. Smith*, 957 F.3d 590, 593–94 (5th Cir. 2020) (holding that aggravated bank robbery in violation of § 2113(a) and (d) is a crime of violence under § 924(c)(3)(A)), *cert. denied*, 2020 WL 6551848 (U.S. Nov. 9, 2020) (mem.).

Jerome claims that his § 924(c) conviction was predicated on either bank robbery *or* conspiracy to commit bank robbery, creating an ambiguity that makes his conviction untenable in light of *Reece*. Jerome is incorrect: his conviction was predicated solely on armed bank robbery. Thus, there is no ambiguity, meaning *Reece* is inapplicable.

No. 19-30225

Accordingly, we AFFIRM the judgments of the district court.[6]

---

[6] The convictions in this case under § 2113(a), (d), and (e) and § 2 for attempting to rob the Campus Federal Credit Union require, in part, establishment that the Campus Federal Credit Union was federally insured, as per § 2113(g). Here, the parties stipulated that the Campus Federal Credit Union was federally insured; accordingly, there was sufficient evidence on that point. *See, e.g.*, *United States v. Abbott*, 265 F. App'x 307, 309–10 (5th Cir. 2008) (per curiam) (rejecting sufficiency challenge to conviction under § 2113 where the parties stipulated to federal insurance).

No. 19-30225

ANDREW S. OLDHAM, *Circuit Judge*, concurring in the judgment:

I do not understand why the majority applies de novo review to Armstead's unpreserved claim under *Rehaif v. United States*, 139 S. Ct. 2191 (2019); *see ante*, at 5–6. De novo review applies to *preserved* errors—because we want defendants to preserve errors, and we want district courts to address them before we do. That's why, on materially identical facts, we previously reviewed an unpreserved *Rehaif* claim like Armstead's only for plain error. *See United States v. Huntsberry*, 956 F.3d 270, 282 (5th Cir. 2020). The majority's embrace of de novo review contravenes *Huntsberry*. And it highlights a disturbing countertrend in our precedent, which encourages defendants to say as little as possible in the district court and to save their good arguments as "gotchas!" for appeal. That's the opposite of the way the system is supposed to work.

I.

We apply de novo review to *preserved* errors. We do that for at least two distinct reasons. The first is definitional: When a defendant preserves a legal error and allows the district court to adjudicate it, we review it de novo—that is, *again* or *afresh*. *See* WEBSTER'S NEW INTERNATIONAL DICTIONARY 699 (2d ed. 1934; 1950) (defining de novo as "afresh"). We step into the shoes of the district court; apply the same legal standards as the district court; and conduct the legal analysis again. *See, e.g.*, *Playa Vista Conroe v. Ins. Co. of the W.*, --- F.3d ---, 2021 WL 836715, at *2 (5th Cir. Mar. 5, 2021). It makes no sense to apply "de novo review" to a question unreviewed by the district court; that is neither "de novo" nor "*re*view." Rather, that's "*tabula rasa* first view." *But cf. Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005).

Judicial efficiency is the second reason we apply de novo review only to preserved errors. Our system operates most efficiently when errors are

raised (and hopefully) remedied at the first available opportunity. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72, 88–90 (1977). Of course, any particular defendant—quite understandably—is more concerned with his personal victory than with the system's efficiency. So there is a natural litigation instinct to lie behind the log and save one or more objections as get-out-of-jail cards that can be played on appeal if necessary. *See id.* at 89. De novo review is the judicial system's answer to this problem: We offer de novo review on appeal—the most beneficial a defendant-appellant could hope for—as a carrot to incentivize the defendant to object in the trial court and hence to promote judicial efficiency over parochial stratagems.

Plain error is the stick. The whole point of plain-error review is to make it more difficult to win on appeal using an unpreserved error. *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 134 (2009). In some areas—Guidelines errors being the most obvious—we've softened plain error to the point that it provides little or no deterrent to litigants who would sit on their rights in the district court. *See United States v. del Carpio Frescas*, 932 F.3d 324, 333–44 (5th Cir. 2019) (Oldham, J., concurring). But generally, plain-error review continues to make it much harder—and sometimes impossible—to prevail on appeal using an unpreserved error. *See United States v. Jackson*, 549 F.3d 963, 977 (5th Cir. 2008) ("Under plain error, if a defendant's theory requires the extension of precedent, any potential error could not have been plain." (quotation omitted)).

Given that preservation of error is the line between de novo review and plain-error review, you might reasonably wonder what it takes to preserve an error. In general, the litigant attempting to preserve an error must focus the decisionmaker's mind on the specific legal problem, so the error (if there is one) can be corrected. As we put it more than a century ago: "The court's attention [must be] so specifically directed to the particular [error] intended to be complained of as to be afforded the opportunity of

withdrawing or correcting the [error], if, on consideration of the [objection], it [i]s deemed to be well founded." *Atl. Coast Line R. Co. v. Raulerson*, 267 F. 694, 696 (5th Cir. 1920).

It necessarily follows that a general declaration of "insufficient evidence!" is not a meaningful objection. It challenges no particular legal error. It identifies no particular factual deficiency. It does nothing to focus the district judge's mind on anything. It's the litigator's equivalent of freeing the beagles in a field that might contain truffles. *Cf. del Carpio Frescas*, 932 F.3d at 331 ("Judges are not like pigs, hunting for truffles buried in the record." (quotation omitted)). Rather, if the defendant wants to preserve an insufficient-evidence challenge for de novo review, he must make a proper motion under Federal Rule of Criminal Procedure 29 and "specify at trial *the particular basis* on which acquittal is sought so that the Government and district court are provided notice." *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007) (emphasis added).

Take for example our decision in *United States v. Herrera*, 313 F.3d 882 (5th Cir. 2002) (en banc) (per curiam). That case concerned a conviction under 18 U.S.C. § 922(g)(3), which prohibits possession of a firearm by a person who's either (A) "addicted to" a controlled substance or (B) an "unlawful user" of it. *See id.* at 884. After the close of the Government's evidence, the defendant did far more than make a boilerplate, generalized, and non-particularized objection to the sufficiency of the evidence. *See ibid.* Herrera moved under Federal Rule of Criminal Procedure 29 for judgment of acquittal on the ground that the Government failed to prove that he was "addicted to" a controlled substance. *Ibid.* He thus pointed to a specific problem in the Government's proof and focused the district court's attention on it.

In accordance with normal rules of error-preservation, we applied de novo review to the preserved error—and only the preserved error. We held: "[w]here, as here, a defendant asserts *specific grounds* for a specific element of a specific count for a Rule 29 motion, he waives all others for that specific count." *Ibid.* Thus, by preserving the objection to evidence that he was "addicted to" a controlled substance, Herrera waived any objection to the Government's proof that was an "unlawful user." *See ibid.* When Herrera tried to raise the latter point on appeal to our court, he did not get the benefit of de novo review. *See id.* at 885.

Or take *Huntsberry*. In that case a federal jury convicted Huntsberry for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). *See* 956 F.3d at 274. At trial, Huntsberry moved under Rule 29 for acquittal, arguing the Government produced insufficient evidence that he knowingly possessed the firearm. 956 F.3d at 282. Then on appeal, Huntsberry shifted gears and argued the evidence *also* was insufficient to prove that he knew he was a felon when he possessed the firearm. *See id.* at 282–83. This latter argument, if preserved, would have entitled Huntsberry to relief under *Rehaif.*

We nonetheless affirmed Huntsberry's conviction for two reasons. First, Huntsberry stipulated at trial that he had a prior felony conviction—thus eliminating the Government's burden to prove it. *See* 956 F.3d at 282 n.5. And second, in accordance with *Herrera*, we held that Huntsberry could get de novo review *only* for the insufficiency arguments he preserved in the district court. *See id.* at 282. Thus, Huntsberry could get de novo review of whether the Government proved he knowingly possessed the firearm. But Hunstberry could get only plain-error review of his *Rehaif* claim. *Ibid.*

## II.

Armstead's case is on all fours with *Huntsberry*. Just like *Huntsberry*, Armstead filed a specific Rule 29 motion; Armstead argued that "there was not a single witness that stated Armstead Kieffer was at the scene of the robbery." ROA.5023–24. Under *Huntsberry* and *Herrera*, Armstead can get de novo review of that claim—but *only* that claim. Everything else is reviewable only for plain error. And just like *Huntsberry*, Armstead stipulated that he was a felon on the day he possessed a firearm—thus eliminating the Government's burden to prove it. Without violating the rule of orderliness, we can therefore only review Armstead's claim for plain error. *Contra ante*, at 5–6 (applying de novo review).

The majority nonetheless premises its de novo approach on *United States v. Staggers*, 961 F.3d 745 (5th Cir. 2020); *see ante*, at 5–6. It's true that *Staggers* applied de novo review. *See* 961 F.3d at 754. But its decision to do so highlights a deep and puzzling tension in our error-preservation precedent.

According to the *Staggers* court, the defendants in that case only "made general objections to the sufficiency of the evidence," *ibid.*—that is, they merely said "the evidence is insufficient." The result is a counterintuitive appellate jackpot: By objecting to *nothing* in particular, the defendants preserved *everything* in general. And by calling the district judge's attention to no particular error, the defendants preserved the right to call our attention to every conceivable error imaginable under the sun—including errors under *Rehaif*, which had not even been decided at the time of trial.

There are at least four problems with that. First, *Staggers* is inapplicable on its own terms. That decision purported to apply de novo review only where the defendant made a "general objection to the sufficiency of the evidence." And that's not what Armstead chose to do. He instead made a specific objection, in a written Rule 29 motion, that said nothing at all

about whether he knew he was a felon when he committed bank robbery. Worse, as in *Huntsberry* (and unlike in *Staggers*), Armstead stipulated that he was a felon. Therefore, *Staggers* is irrelevant.

Second, even if *Staggers* applied, its rule turns error preservation upside down. The whole point of error preservation and appellate standards of review is that we want parties to raise their claims in the district court. But under *Staggers*, why would any reasonable defendant object to anything? The only "good" Rule 29 motion is a vacuous one; it's *always* better to sandbag the district court and maximize appellate flexibility.

Third, *Staggers* is premised on a misunderstanding of precedent. It based its de novo review on a single sentence in *United States v. Daniels*, 930 F.3d 393 (5th Cir. 2019). *See Staggers*, 961 F.3d at 754 ("'When a defendant makes a general sufficiency-of-the-evidence challenge, we review the sufficiency of the evidence supporting a conviction de novo.'" (quoting *Daniels*, 930 F.3d at 402)). *Daniels* in turn based its assertion on a single sentence in *United States v. Brown*, 727 F.3d 329, 335 (5th Cir. 2013). *See Daniels*, 930 F.3d at 402 ("'When a defendant makes a general sufficiency-of-the-evidence challenge, we review the sufficiency of the evidence supporting a conviction de novo.'" (quoting *Brown*, 727 F.3d at 335)). But *Brown* did not involve a general sufficiency-of-the-evidence challenge at all; rather, the defendants' Rule 29 motions in that case specified the elements on which the Government allegedly fell short. *See* 727 F.3d at 335. So somehow our cases applying de novo review to *generalized* Rule 29 motions are based on a single stray sentence from a case involving *particularized* Rule 29 motions.

Fourth, *Staggers* is premised on a mistake of fact. The court asserted that one of the defendants in that case—Morrison—made only a "general objection[] to the sufficiency of the evidence." *Staggers*, 961 F.3d at 754. In

reality, however, Morrison made a very specific and non-general objection to the sufficiency of the evidence. His attorney argued, *inter alia*, that "[t]here has certainly been insufficient facts, evidence, and testimony to establish that Mr. Morrison had the required intent to participate in a conspiracy to distribute either 500 grams of powder cocaine, or any powder cocaine." The same attorney also argued:

> The specific date on [count 2 of the indictment against Morrison] is that a phone call was allegedly made on May 1st of 2015, and that's the date that is listed in the indictment. I do not believe the government presented any evidence of any wiretap or phone call that took place on May 1st, and so I would say that, as a matter of law, there was no evidence presented as to any calls on that date.

That is far, far from a generalized objection. *Contra ante*, at 6 (ignoring this particularized objection); *id.* at 3 n.1 (doing the same for Armstead's particularized objection).

In short, *Staggers* was wrong on the facts. It was wrong on the law. It turns error preservation upside down by directing defendants not to specify the basis for their Rule 29 motions. And it does not apply here in any event. The majority's decision to follow it only deepens our circuit's confusion over this important area of law.

\*　　\*　　\*

The Supreme Court has been very clear: "The trial is the main event at which a defendant's rights are to be determined and not simply a tryout on the road to appellate review." *Davila v. Davis*, 137 S. Ct. 2058, 2066 (2017) (quotations omitted). Our court has been equally clear but diametrically opposed: Whatever you do, hide the basis for your objections and pull your

No. 19-30225

punches at trial, so you can maximize your chances for success on appeal. In my view, our trial courts deserve better.[*]

---

[*] I also do not understand the majority's discussion of *United States v. Rawlings*, 522 F.3d 403 (D.C. Cir. 2008). *See ante*, at 7–8. My hang-up is not the wisdom or folly of the *Rawlings* procedure. What's unclear to me is where we get the power to embrace it. That long list of shoulds and ifs and thens looks more like something that would come from an advisory (or model rules) committee. And more importantly, it seems problematic to adopt the *Rawlings* rule here because the district court repeatedly violated it. If the violations matter, then we'd have to reverse. If the violations don't matter (which is what I understand the majority to hold), then our entire discussion of *Rawlings* is advisory. *But see* Letter from Chief Justice John Jay and the Associate Justices to President George Washington (Aug. 8, 1793), *in* 3 Correspondence & Public Papers of John Jay 488–89 (Johnson ed., 1891).