In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 23-1781, 23-2201, & 23-2245

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANYCCO M. RIVERS and
LADONTA A. TUCKER,

*Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Central District of Illinois.
Nos. 16-CR-20017, 22-CR-20015 — **Colin S. Bruce**, *Judge.*

_____

ARGUED MAY 30, 2024 — DECIDED JULY 24, 2024

_____

Before ST. EVE, KIRSCH, and KOLAR, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Anycco Rivers and Ladonta Tucker carjacked a BMW at gunpoint and led police on a high speed chase before crashing the vehicle into a guardrail and continuing their flight on foot. A jury convicted both men of carjacking. It also convicted Rivers of carrying and discharging a firearm during and in relation to a crime of violence. Tucker, on the other hand, received a lesser conviction under the same

statute only for carrying—not discharging—a firearm during and in relation to the carjacking. Tucker contests that firearm conviction on appeal, and we uphold that conviction today. Rivers, for his part, challenges only his sentence, arguing the district court erred by applying a reckless endangerment enhancement. We reject this argument but nevertheless vacate Rivers's carjacking sentence and remand to the district court in light of retroactive Guidelines amendments.

## I. Background

### A. Factual Background

On March 17, 2022, Anycco Rivers and Ladonta Tucker carjacked a BMW on a residential street in Bourbonnais, Illinois. The car was parked at the side of the road with its engine idling when Rivers approached the front passenger-side window. He pointed two guns at the car's owner, who was seated in the driver's seat, and told him to get out of the car. Tucker then searched the owner and took his wallet before letting him go. Ducking behind a nearby parked car, the owner heard Rivers yell at Tucker to unlock the car. Tucker and Rivers then got into the vehicle, Tucker in the driver's seat and Rivers in the front passenger seat. Witnesses reported seeing Rivers shoot a gun into the air as Tucker drove away, but no one observed Tucker with a firearm.

A few minutes later, police spotted the BMW speeding and weaving around other cars. During the ensuing seven-mile high speed chase, the BMW ignored traffic signs, drove erratically, and weaved in and out of traffic. Attempting to slow the BMW, police officers used a squad car to force the BMW toward the road's right shoulder. Instead, the BMW collided with the squad car, then crossed into another lane of

traffic. Another officer was able to position his squad car to force the BMW into a guardrail, disabling it. Tucker then exited the driver's seat, fleeing west into a wooded area. Rivers followed Tucker out the driver's-side door and fled in the opposite direction—across three lanes of traffic and down a ravine.

Police officers chased both men on foot. Two officers pursued Rivers across the busy road, down a steep embankment, and into a rocky creek bed where they struggled to subdue and finally arrest him. In the woods to the west, officers similarly managed to capture Tucker, discovering a latex glove in his pocket.

Police recovered three firearms from the scene. One firearm, a loaded Cobray 9mm pistol with an extended magazine, lay on the ground next to the BMW's front driver's-side door. Two other firearms, an empty .45 caliber Glock and a .40 caliber Taurus (containing two rounds), were under the BMW's front passenger seat where Rivers had sat. Police also found ten spent cartridges around the scene of the carjacking, which they later determined had all been fired from the Taurus pistol. Testing revealed Tucker's DNA on the Cobray pistol and Rivers's fingerprints on all three firearms.

### B. Procedural Background

#### 1. Indictment and trial

A grand jury in the Central District of Illinois indicted both Rivers and Tucker on one count of carjacking, in violation of 18 U.S.C. § 2119. The grand jury also indicted Rivers on one count of carrying and discharging the Taurus and Glock during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Finally, the indictment charged

Tucker with carrying the Cobray during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

At trial, the government presented testimony from the carjacking victim, other witnesses, and police officers involved in the chase. The government also presented forensic evidence from the firearms and spent cartridges. At the close of evidence, both Tucker and Rivers moved for a judgment of acquittal. Tucker's motion only generally argued that the evidence was insufficient to support a conviction. Rivers contested the sufficiency of the evidence as to his possession of the Glock and Taurus and his firing of the Taurus. The district court denied both motions.

The defense did not submit proposed jury instructions, nor did it object to jury instruction 36:

> A person carries a firearm "in relation to" a crime if there is a connection between the use or carrying of the firearm and the crime of violence. The firearm must have some purpose or effect with respect to the crime; its presence or involvement cannot be the result of accident or coincidence. The firearm must at least facilitate, or have the potential of facilitating, the crime.

The district court thus instructed the jury accordingly. After deliberations, the jury found both defendants guilty on each of their respective charges. Both defendants renewed their motions for a judgment of acquittal, which the district court again denied.

### 2. Sentencing

The district court sentenced Tucker to 100 months' imprisonment for carjacking and added the mandatory consecutive

sentence, 60 months, for violating § 924(c). On top of that, the court revoked Tucker's supervised release for a prior felon-in-possession conviction and added 24 months to his sentence, resulting in a total sentence of 184 months. Tucker does not challenge his sentence on appeal.

Rivers's Presentence Investigation Report recommended a two-level enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2. Over Rivers's objection, the district court agreed to apply the enhancement at the sentencing hearing. In support, it explained that "Rivers initiated the carjacking," and "[b]oth of them—it appears to me and I find based on all the evidence that they were working together—tried to flee." The district court also based the enhancement on Rivers's flight once the vehicle was disabled, noting that Rivers "could have just stayed in the vehicle, but he didn't." He then led police on a chase through a ravine and continued to evade arrest—and "at any point in there, things could have turned out very badly." The court ultimately concluded that "Rivers certainly induced, commanded, or directed Mr. Tucker to do activities related to the seizing of the vehicle, the carjacking, and then all of their subsequent conduct created a great risk of bodily injury to a lot of people."

Rivers had six criminal history points, to which the district court added two criminal history points because he committed this new offense while on parole. The addition of these points resulted in a criminal history category of IV rather than III, with a Guidelines range of 77–96 months.

The district court ultimately sentenced Rivers to 87 months for carjacking and a 120-month mandatory consecutive sentence for violating § 924(c).

## II. Analysis

On appeal, Tucker objects to his conviction and Rivers his sentence. For his part, Tucker insists that the evidence was insufficient to support his firearm conviction. Rivers, meanwhile, objects to the application of the reckless endangerment enhancement and asks that we vacate his sentence and remand to the district court for resentencing in view of recent amendments to the Guidelines. For the reasons explained below, we affirm Tucker's conviction and Rivers's enhancement, but we vacate and remand Rivers's carjacking sentence to the district court to decide whether to resentence Rivers pursuant to the recent Guidelines amendments.

### A. Tucker

A jury convicted Tucker of violating § 924(c)(1)(A)(i) by carrying a firearm "during and in relation to" a crime of violence, which includes carjacking. Tucker admits that he carried the Cobray pistol during the carjacking, but he insists that because he never revealed the weapon in the course of the carjacking or escape, it did not facilitate—and therefore was not carried in relation to—the offense.

Tucker's problem is that our caselaw permits juries to convict when the firearm carried has "the potential of facilitating" the underlying offense. *United States v. Mancillas*, 183 F.3d 682, 707 (7th Cir. 1999); *see also* Seventh Circuit Pattern Criminal Jury Instructions (2023). Indeed, the jury in Tucker's trial was given just such an instruction. Tucker did not object. He nonetheless argues he can overcome this hurdle because our "potential-to-facilitate" standard departs from Supreme Court precedent and thus requires course correction.

Before wading into principles of stare decisis, we must consider the standard of review. Tucker presents his appeal as a challenge to the district court's denial of his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. Below, Tucker made a general Rule 29 motion challenging the sufficiency of the evidence, and while "[a] motion under Rule 29 that makes specific arguments waives issues not presented, … a general motion preserves every objection." *United States v. Maez*, 960 F.3d 949, 959 (7th Cir. 2020); *see also United States v. Jones*, 763 F.3d 777, 811–12 (7th Cir. 2014). Because he made a general Rule 29 motion, Tucker contends, he has preserved his arguments on appeal. The government disagrees, arguing that Tucker's appeal is really a challenge to the jury instructions—which he did not challenge below—disguised as a sufficiency of the evidence challenge to secure a more favorable standard of review.

We have at times applied de novo review to legal questions wrapped up in challenges to the sufficiency of the evidence, even when the specific legal argument was not presented to the district court. *See, e.g.*, *United States v. Harden*, 893 F.3d 434, 445 (7th Cir. 2018) (citing *United States v. Stott*, 245 F.3d 890, 904 (7th Cir. 2001)); *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005); *cf. United States v. Castillo*, 406 F.3d 806, 813–14 (7th Cir. 2005) (appearing to apply de novo review when evaluating the meaning of "in furtherance of" on a sufficiency-of-the-evidence challenge).[1] A few other

---

[1] On a few occasions, we have repeated the rule that "[a] motion under Rule 29 that makes specific arguments waives issues not presented, but a general motion preserves every objection." *Maez*, 960 F.3d at 959; *see also United States v. Moore*, 363 F.3d 631, 637 (7th Cir. 2004), *vacated and remanded*

circuits, meanwhile, have come to the opposite conclusion, holding that if the legal argument is not presented to the district court, the circuit will only review it for plain error, even if the defendant made a general motion for acquittal. *See, e.g., United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020) (applying plain error review when a defendant purported to appeal the sufficiency of the evidence but instead argued that "the district court applied the wrong legal standard in assessing his guilt"); *United States v. Fuertes*, 805 F.3d 485, 497 (4th Cir. 2015) (same); *United States v. Wesley*, 417 F.3d 612, 617–18 (6th Cir. 2005) (same).

We need not resolve which standard of review applies here. Whether Tucker preserved his argument and secured de novo review on appeal or failed to do so and must submit to

*on other grounds*, *Jackson v. United States*, 543 U.S. 1100 (2005) ("Although a motion for judgment of acquittal need not spell out the particular basis for a challenge to the sufficiency of the evidence, when such a motion raises specific arguments, any claims not presented in the motion are waived."); *United States v. Hosseini*, 679 F.3d 544, 550 (7th Cir. 2012) ("We have held that when a defendant challenges the sufficiency of the evidence by motion for judgment of acquittal and makes specific arguments in support of that motion, any arguments omitted are thereby forfeited."). We have some doubts about this rule and the perverse incentives it sets up to dissuade defendants from making specific arguments in a Rule 29 motion. *See United States v. Kieffer*, 991 F.3d 630, 637–41 (5th Cir. 2021) (Oldham, J., concurring) (noting that permitting a general Rule 29 motion to preserve all sufficiency arguments "encourages defendants to say as little as possible in the district court and to save their good arguments as 'gotchas!' for appeal"). We are skeptical that "by calling the district judge's attention to no particular error," a defendant preserves the right to challenge every conceivable problem in the court of appeals. *Id.* at 640. But as with the standard of review for Tucker's legal challenge to the meaning of "in relation to," we simply note this issue for the attention of a future panel.

plain error review in accordance with Federal Rule of Criminal Procedure 52(b), the outcome is the same. For the reasons we explain below, even under the more generous de novo review standard, we reaffirm circuit precedent permitting § 924(c) convictions when a defendant carries a firearm during a predicate offense with the potential to facilitate that offense. Consequently, we affirm Tucker's conviction.

### 1. Meaning of "in relation to"

Tucker claims the district court used too loose a standard to judge the relationship between his gun and the carjacking. Yet he did not object to this § 924(c) pattern jury instruction:

> A person carries a firearm "in relation to" a crime if there is a connection between the use or carrying of the firearm and the crime of violence. The firearm must have some purpose or effect with respect to the crime; its presence or involvement cannot be the result of accident or coincidence. The firearm must at least facilitate, or have the potential of facilitating, the crime.

This instruction draws on language in *Smith v. United States*, 508 U.S. 223 (1993), and its progeny in this circuit. We have repeatedly stated that for a § 924(c) conviction for carrying a firearm during and in relation to a crime of violence, "in relation to" means that the gun facilitated or had the potential to facilitate the crime. *See, e.g., Stott*, 245 F.3d at 906; *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000); *United States v. Cotton*, 101 F.3d 52, 55–56 (7th Cir. 1996).

Because our precedent is clear, Tucker must present "a compelling reason to overturn" it. *Santos v. United States*, 461 F.3d 886, 891 (7th Cir. 2006) (quoting *McClain v. Retail Food*

*Emps. Joint Pension Plan*, 413 F.3d 582, 586 (7th Cir. 2005)). Neither simple disagreement with a rule nor the possibility that a rule is debatable constitutes a compelling reason. *Id.* at 893; *see also United States v. Lamon*, 893 F.3d 369, 371 (7th Cir. 2018). Our respect for "principles of stare decisis require[s] that we give considerable weight to prior decisions of this court unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling." *Santos*, 461 F.3d at 891 (cleaned up). A decision from the Supreme Court need not be directly on point. Even an "intervening Supreme Court decision that displaces the rationale of our precedent" counts as a compelling reason to overturn circuit precedent. *Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 776 (7th Cir. 2019).

Recognizing this high bar, Tucker lines up multiple Supreme Court cases, arguing they compel us to trim back circuit precedent on the meaning of "in relation to." But none of those cases provide the basis to overturn our precedent.

First, contrary to Tucker's argument, the Supreme Court's decision in *Smith* supports a definition of "in relation to" that includes the potential to facilitate the underlying offense when a defendant carries a firearm during a crime of violence as defined by § 924(c). *See* 508 U.S. at 238. The statute establishes penalties when a person "uses *or* carries a firearm." § 924(c)(1)(A) (emphasis added); *see also Muscarello v. United States*, 524 U.S. 125, 136 (1998) (holding that "uses" and "carries" have independent meaning). *Smith* limited the meaning of "in relation to" when a defendant is charged with *using* a firearm during a predicate offense to a use that "facilitates or furthers" that offense. 508 U.S. at 232. But Tucker's attempt to

persuade us that this holding alone defines the scope of "in relation to" falls short. *Smith* went on to define "in relation to" more broadly when the defendant is charged with merely *carrying*, not *using* a firearm. In this context, *Smith* explained the Ninth Circuit has held that "the gun at least must 'facilitat[e], or ha[ve] the potential of facilitating,'" the predicate offense. *Id.* at 238 (quoting *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir. 1985)). Instead of disclaiming this standard, the Court simply noted that it need not "determine the precise contours" of "in relation to," as the firearm in question played a much larger role than the "'ordinary case' under § 924(c)(1), in which the gun merely facilitates the offense by providing a means of protection or intimidation." *Id.* (quoting *United States v. Phelps*, 895 F.2d 1281, 1283 (9th Cir. 1990)).

Even if we were to accept Tucker's argument that, by quoting the Ninth Circuit, the Supreme Court was not endorsing a potential-to-facilitate standard, that concession does not constitute a compelling reason to overturn our precedent. The Court, at the very least, left the door open to the possibility that a potential-to-facilitate standard is appropriate when possession of a firearm is at issue.

Nor do Supreme Court decisions issued shortly after *Smith* compel a narrower reading of *Smith*. First, while *Bailey v. United States* makes clear that "active employment" of the firearm is necessary when a defendant is charged with *using* a firearm in violation of § 924(c), it distinguished between the two types of conduct addressed by the statute, setting the requirements for a *carrying* charge aside. 516 U.S. 137, 143–45 (1995); *see also Castillo*, 406 F.3d at 812 (explaining that *Bailey* rejected a broad interpretation of "use"). And *Bailey* did not define "in relation to." Neither did *Muscarello*, the other case

Tucker points to as an indication that we have misinterpreted *Smith*. In fact, *Muscarello* read *Bailey* to mean that a § 924(c) charge for carrying a firearm need not involve "active employment" of the weapon at all. 524 U.S. at 136.[2]

Finally, Tucker argues that the Supreme Court's recent decision in *Dubin v. United States*, 599 U.S. 110 (2023), compels us to revisit decisions resting on the potential to facilitate. *Dubin* defined "aggravated identity theft" and the meaning of "in relation to" in 18 U.S.C. § 1028A(a)(1). *Id.* at 116–17. In doing so, it explicitly left § 924(c) caselaw undisturbed because the relevant terms, including "use" and "in relation to" are context dependent. *Id.* at 119 & n.4. Consequently, *Dubin* does not present the necessary reason to overcome stare decisis.

Without a compelling reason to overturn circuit precedent, we reaffirm our circuit's law that when a defendant is charged with carrying a firearm during a crime of violence, that firearm must facilitate or have the potential to facilitate the crime.

### 2. Application

Having confirmed the legal standard necessary for a § 924(c) conviction, we turn to whether the evidence presented at trial was sufficient for a reasonable jury to convict

---

[2] Tucker mentions a few other Supreme Court cases to justify reconsideration. None are persuasive. *See Dean v. United States*, 556 U.S. 568, 573 (2009) (explaining that *Smith* defined "in relation to" to mean "that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence" (quoting *Smith*, 508 U.S. at 238)); *Watson v. United States*, 552 U.S. 75 (2007) (analyzing the meaning of "use," but not defining "in relation to").

Tucker. When evaluating the sufficiency of the evidence, we view that evidence in the light most favorable to the prosecution and "will reverse only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond reasonable doubt." *Maez*, 960 F.3d at 966 (cleaned up). This standard imposes a "nearly insurmountable hurdle." *United States v. Johnson*, 874 F.3d 990, 998 (7th Cir. 2017).

Tucker does not dispute that he carried the Cobray pistol during the carjacking. So the only issue we must resolve is whether the evidence was sufficient to find that he carried the firearm *in relation to* the crime—in other words, that the firearm facilitated or had the potential to facilitate the carjacking.

Tucker carried the Cobray while participating in a carjacking in which his co-defendant forced the driver out of the car at gunpoint. Tucker then drove the car—at dangerous speeds—while fleeing from police. A reasonable jury could conclude that, under these circumstances, the firearm provided Tucker with "a means of protection," *Smith*, 508 U.S. at 238, or "a necessary sense of security," *United States v. Patterson*, 348 F.3d 218, 227 (7th Cir. 2003), *abrogated on other grounds by Simpson v. United States*, 376 F.3d 679 (7th Cir. 2004). The jury could fairly reach the commonsense conclusion that a firearm carried during a carjacking—even if not revealed—at least had the *potential* to facilitate the carjacking and escape. *Cf. Castillo*, 406 F.3d at 815 (noting that "[o]ften, the evidence regarding the underlying drug crime and the weapon will be so intertwined that establishing the link will be easy, at least at the sufficiency of the evidence stage").

The government presented sufficient evidence from which a reasonable jury could conclude that Tucker carried the

Cobray in relation to the carjacking, and we affirm the district court's denial of his motion for acquittal.

**B. Rivers**

Unlike Tucker, Rivers takes aim at his sentence on appeal. He asks that we vacate his carjacking sentence under 18 U.S.C. § 2119 and remand to the district court for resentencing on two grounds. First, he contends the district court improperly applied the reckless endangerment enhancement under U.S.S.G. § 3C1.2. And second, he argues we should give the district court the opportunity to apply a retroactive Guidelines amendment. Although we find no error in the district court's application of the reckless endangerment enhancement, we agree with Rivers that, in light of a retroactive adjustment in the method for calculating criminal history points under the Guidelines, his carjacking sentence merits vacatur and a remand to the district court.

**1. Enhancement**

The district court applied U.S.S.G. § 3C1.2, Reckless Endangerment During Flight, to Rivers's carjacking sentence calculation. That enhancement adds two points to the total offense level "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2 (2023). The enhancement applies "where the conduct occurs in the course of resisting arrest." *Id.*, comment. (n.3). The endangerment must result from "the defendant's own conduct and … conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." *Id.*, comment. (n.5). "[S]ome form of direct or active participation is necessary," *United States v. Hibbett*, 97 F.4th

477, 481 (7th Cir. 2024), and the district court must make factual findings to that effect, *United States v. Seals*, 813 F.3d 1038, 1046 (7th Cir. 2016).

Rivers argues that, as a matter of law, the undisputed facts do not support the enhancement, so we review the application of the enhancement de novo. *United States v. House*, 883 F.3d 720, 723 (7th Cir. 2018). The facts as determined by the district court need only support the enhancement by a preponderance of the evidence. *Hibbett*, 97 F.4th at 480.

The district court made an unequivocal factual finding that Rivers actively participated in endangering others during the course of the escape attempt. It found that Rivers "certainly induced, commanded, or directed Mr. Tucker to do activities related to the seizing of the vehicle, the carjacking, and then all of their subsequent conduct created a great risk of bodily injury to a lot of people." That factual conclusion rested upon the district court's view of the totality of the circumstances and detailed factual findings about the carjacking and flight. The court found that "Rivers initiated the carjacking" by forcing the victim to surrender the vehicle, and both defendants, "working together[,] tried to flee." Rivers then got out of the stolen vehicle once it was no longer drivable and independently chose to continue his attempted escape across the road, through a wooded area, "down into a creek, through a river [or creek]," and then struggled with police officers in the river. The district court was clear that, although it considered facts from the underlying crime and high speed chase, Rivers's escape on foot could alone support application of the enhancement. The court concluded that "at any point in there, things could have turned out very badly," whether during the car chase or the subsequent foot pursuit. Finally, the court

stated it applied the enhancement due to "the initial carjacking, portions of the high-speed chase [and the danger police were in when attempting to stop the vehicle], and then the fleeing after the chase into the river."

Framing his argument as a legal challenge, Rivers contends that the district court implicitly applied a "reasonable foreseeability" standard to justify application of the enhancement rather than, as our precedent requires, active participation. To the contrary, the district court explicitly found that Rivers himself created a danger when he continued his escape on foot. The factual findings above clearly support the district court's explicit finding that Rivers "certainly induced, commanded, or directed" activities that created a dangerous environment, a conclusion reinforced by his own conduct, which "created a great risk of bodily injury to a lot of people." Rivers's own actions justify the enhancement under the guideline and our precedent.

Yet Rivers argues that nonbinding caselaw from other circuits shows his participation was not active *enough* to legally support the enhancement. He arrives at this conclusion by separating the car chase from the foot chase and arguing that each event in isolation is insufficient to show active participation. Here, too, Rivers's argument fails. Unlike other cases rejecting the application of the enhancement, the district court considered the totality of the circumstances and made extensive factual findings about Rivers's active participation in endangering lives during the high speed chase and when he fled from police on foot, viewing the escape as a single continuous event. *See, e.g., United States v. Reggs*, 909 F.3d 911, 913–14 (8th Cir. 2018) (finding that that while an inference of active participation in a car chase from later flight on foot might be

permissible, "on this record it is not reasonable"); *United States v. Johnson*, 694 F.3d 1192, 1197 (11th Cir. 2012) (finding that the defendant's flight on foot after the getaway car crashed did not illuminate the question of the enhancement's application because the district court did not "make a specific finding that the defendant actively caused or procured the reckless behavior at issue"); *United States v. Cespedes*, 663 F.3d 685, 691 (3d Cir. 2011) (finding the defendant's participation in planning the bank robbery and the district court's general references to a foot pursuit after the defendant exited the getaway vehicle insufficient to support the enhancement).

More than the mere fact of flight, the district court found that the particular nature of Rivers's flight created a danger for police when he ran across multiple lanes of traffic, through a wooded area, and into a rocky ravine. The details of the carjacking, high speed chase, and subsequent foot chase draw this case closer to *United States v. Byrd*, 689 F.3d 636 (6th Cir. 2012), upon which the district court relied when applying the enhancement, and which Rivers attempts to distinguish. In that case, the Sixth Circuit found an inference of active participation permissible when the underlying offense involved a bank robbery and the defendant urged co-conspirators to hurry up by honking the horn of the getaway car. *Id.* at 641. He later rode as a passenger in another getaway car, recklessly driven, before continuing his flight on foot. *Id*. "All of these facts," the court concluded, "show Byrd's desire to evade capture, from which one could infer that Byrd encouraged or supported [the other driver's] reckless driving, which was also motivated by a desire to escape." *Id.* Here, too, Rivers's own conduct indicates a desire to evade capture and a willingness to endanger others to achieve that goal.

The district court's thorough and detailed factual findings adequately support the application of the reckless endangerment enhancement.

### 2. Guidelines amendments

In keeping with the Guidelines in effect at the time, the Presentence Investigation Report added two criminal history points to Rivers's carjacking sentence calculation because Rivers was "under [a] criminal justice sentence"—parole—when he committed the offense at issue. U.S.S.G. § 4A1.1(d) (2021). Without those two points, rather than a Guidelines range of 77–96 months, Rivers's Guidelines range for carjacking would have been 63–78 months. The district court imposed a within-Guidelines sentence of 87 months for carjacking and did not expressly state that it would apply the same sentence regardless of the suggested Guidelines range.

While Rivers's appeal was pending before this court, the United States Sentencing Commission proposed two amendments that went into effect on November 1, 2023. *See United States v. Claybron*, 88 F.4th 1226, 1228 (7th Cir. 2023). Amendment 821 did away with additional criminal history points "when the offense of conviction was committed by the defendant while under any criminal justice sentence." *Id.* Instead, district courts should only "[a]dd 1 point if the defendant (1) receives 7 or more points" for prior sentences, "and (2) committed the instant offense while under any criminal justice sentence." U.S.S.G. § 4A1.1(e) (2023). The second amendment, Amendment 825, makes Amendment 821 retroactive, permitting (but not requiring) courts to "conduct[] sentence reduction proceedings and enter[] orders under 18 U.S.C. § 3582(c)(2)" for sentences with effective dates prior to February 1, 2024. *Claybron*, 88 F.4th at 1228.

In *Claybron*, we concluded that although these specific amendments to the Guidelines provide a pathway for people under criminal sentences to seek sentence reduction proceedings directly from the district court through 18 U.S.C. § 3582(c)(2), there is no functional difference between § 3582(c)(2) and 28 U.S.C. § 2106, a statute authorizing us to vacate and remand to the district court any judgment "lawfully brought before [us] for review." *Id.* at 1229 (quoting § 2106). Indeed, permitting such a remand under § 2106 "promotes judicial economy." *Id*. at 1231.

In light of these two amendments and our recent decision in *Claybron*, Rivers asks that we vacate his carjacking sentence and remand to the district court for resentencing. The government does not oppose this request. Accordingly, we vacate Rivers's carjacking sentence under 18 U.S.C. § 2119 and remand to the district court for the opportunity to conduct a limited resentencing on that conviction in light of Amendments 821 and 825. On remand, the district court can reassess Rivers's sentence considering the Amendment's effect on his Guidelines range and the 18 U.S.C. § 3553(a) factors. Such a reconsideration may, if the district court deems it appropriate, include a new hearing and opportunity for the parties to argue the impact of the § 3553(a) factors. *See id*.

### III. Conclusion

For these reasons, Tucker's sentence is AFFIRMED. Rivers's § 2119 carjacking sentence is VACATED and REMANDED to the district court for resentencing in light of Amendments 821 and 825.

KIRSCH, *Circuit Judge*, concurring. I join the opinion but write separately to add to the majority's discussion of our standard of review. At trial, Ladonta Tucker made a general motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, challenging the sufficiency of the government's evidence. On appeal, however, Tucker's argument effectively challenges the jury instructions, which he did not object to at trial. Nevertheless, he claims de novo review applies because his general Rule 29 motion preserved all challenges, including his purely legal argument. The majority correctly notes that our cases "have at times applied de novo review to legal questions wrapped up in challenges to the sufficiency of the evidence, even when the specific legal argument was not presented to the district court." *Ante*, at 7. However, the standard of review was not disputed in those cases, and the legal questions presented were directly tied to the sufficiency of the evidence, unlike the case here. See, e.g., *United States v. Harden*, 893 F.3d 434, 446 (7th Cir. 2018) (analyzing whether the evidence sufficiently showed that the defendant's heroin was the "but-for" cause of the victim's death). The majority avoids deciding whether de novo or plain error review applies in this case because, either way, Tucker loses. I write separately to clarify our law and explain why a specific legal argument like Tucker's challenge was not preserved by his general Rule 29 motion and should be reviewed only for plain error. Fed. R. Crim. P. 52(b).

A sufficiency of the evidence challenge is limited in scope. *Musacchio v. United States*, 577 U.S. 237, 243 (2016) ("On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against him and a jury finding of guilt

'beyond a reasonable doubt.'") (quotation omitted). In reviewing such a challenge, we only ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jackson*, 5 F.4th 676, 682 (7th Cir. 2021) (emphasis in original) (cleaned up). In other words, a defendant brings his sufficiency challenge by focusing on the evidence presented by the government and arguing that it did not sufficiently prove one or more of the charged crime's essential elements. See Fed. R. Crim. P. 29(a) ("[T]he court … must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."). And as mentioned above, a defendant can preserve all of these sufficiency challenges (for example, as to each separate element) with a general motion for judgment of acquittal under Rule 29.

But a defendant who raises a new, purely legal argument on appeal regarding the meaning of an element of his crime (rather than regarding the sufficiency of the evidence as to that element) does not preserve his argument simply by filing a general motion for judgment of acquittal. In that circumstance, the defendant's argument goes well beyond the scope of a mere sufficiency of the evidence challenge and instead presents a question of law. See *United States v. Compian-Torres*, 712 F.3d 203, 207 (5th Cir. 2013) ("Compian's appeal is phrased as a challenge to the sufficiency of the evidence, but it in fact presents a pure question of law."); cf. *Lexington Ins. Co. v. Horace Mann Ins. Co.*, 861 F.3d 661, 669 (7th Cir. 2017) (in the civil context, noting that "as a general matter, pure questions of law ought not to be included in a Rule 50(a) motion in the first place, as doing so defeats the purpose of that motion, which is to challenge the sufficiency of the evidence")

(cleaned up). Such a challenge falls outside the narrow bounds of a Rule 29 motion.

That is precisely the posture of Tucker's appeal. Rather than bring a true sufficiency of the evidence challenge, Tucker raises a purely legal question about the proper interpretation of "in relation to" within 18 U.S.C. § 924(c). Try as he might to convince us otherwise, his challenge has nothing to do with the evidentiary sufficiency of the government's case against him, and it therefore does not get the benefit of preservation under our forgiving rule for general Rule 29 motions. Rather, Tucker's argument is a belated objection to a jury instruction; it asks us to effectively strike the "potential of facilitating" language from our pattern jury instruction defining the "in relation to" element of § 924(c). No doubt, Tucker's principal concern is that the jury convicted him based on erroneous law. But jury instructions are how parties and the court "provide fair and accurate summaries of the law" at trial. *United States v. Curry*, 538 F.3d 718, 731 (7th Cir. 2008). Therefore, the jury instruction conference, not a general Rule 29 motion for judgment of acquittal, was Tucker's opportunity to object to the "in relation to" definition used at trial. He did not take that opportunity, so plain error review applies. Fed. R. Crim. P. 30(d) ("Failure to object [to jury instructions] in accordance with this rule precludes appellate review, except [for plain error] as permitted under Rule 52(b).").

Other courts have come to the same conclusion in analogous contexts. For example, in *United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015), the defendant, for the first time on appeal, challenged whether sex trafficking qualified as a crime of violence under § 924(c)(3). *Id.* at 497. He argued, like Tucker, that his general motion for judgment of acquittal preserved all

of his sufficiency of the evidence challenges. *Id.* The Fourth Circuit rejected that argument:

> The government, however, points out, correctly we think, that Ventura's objection is not about factual or evidentiary sufficiency; rather, his argument is a purely legal one. … Ventura takes issue with the district court's instruction … that sex trafficking by force, fraud, or coercion is categorically a crime of violence.

*Id.* The court then held that "Ventura's motion for judgment of acquittal, which dealt only with sufficiency of the evidence, did not preserve a purely legal challenge to the jury instruction …." *Id.*

The Fifth Circuit in *United States v. Brace*, 145 F.3d 247 (5th Cir. 1998) (en banc), reached a similar conclusion. There, the court held that the defendant's general motion for judgment of acquittal preserved his sufficiency of the evidence challenge, but it did not preserve his novel argument that his charged crime required the proof of an additional element. *Id.* at 258 n.2. Thus, while the court reviewed the sufficiency of the evidence challenge de novo, it did so "under existing relevant precedent," thereby disregarding the defendant's new legal argument on appeal. *Id.* at 263; see also *United States v. Haggerty*, 997 F.3d 292, 296 (5th Cir. 2021) ("Regardless, however, of whether Haggerty has preserved a general sufficiency-of-the-evidence challenge, there are serious reasons to think that Haggerty has *not* preserved the underlying legal argument that a defendant's Indian or non-Indian status is an essential element of any offense prosecuted pursuant to § 1152.") (emphasis in original).

Reviewing newly raised legal arguments de novo as part of a general sufficiency of the evidence challenge contravenes our adversarial system, the Supreme Court's guidance, and the Federal Rules of Criminal Procedure. Simply put, de novo review is not the default standard for arguments raised for the first time on appeal. Rather, appellate courts "normally will not correct a legal error made in criminal trial court proceedings" at all "unless the defendant first brought the error to the trial court's attention." *Henderson v. United States*, 568 U.S. 266, 268 (2013). The exception to that general principle is plain error review under Rule 52(b). *Id.* But notably, the Supreme Court has "cautioned against any unwarranted expansion of Rule 52(b)." *Johnson v. United States*, 520 U.S. 461, 466 (1997). And "[e]ven less appropriate than an unwarranted expansion of the Rule would be the creation out of whole cloth of an exception to it, an exception which we have no authority to make." *Id.*; see also *United States v. Yijun Zhou*, 838 F.3d 1007, 1014–16 (9th Cir. 2016) (Graber, J., concurring) (noting that "[t]he Supreme Court has left very little room—if any at all— for the judicial creation of exceptions to Rule 52(b)" and emphasizing that pure questions of law not raised in the district court should be reviewed, at most, for plain error).

There is simply no reason to review de novo a legal argument not previously raised before the district court. This is true even if the claimed error is as serious as a potentially incorrect definition of an element of a crime, like Tucker claims here. See *Johnson*, 520 U.S. at 466 ("[T]he seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure."). Indeed, plain error review, on its own, serves as a sufficient backstop for such a concern. For instance, if a jury instruction wholly omitted a well-established element of a crime, that error

would likely be plain and subject to reversal under Rule 52(b). But that is not Tucker's case, as he asks us to overrule our precedent and rewrite our pattern jury instructions. See *United States v. Freed*, 921 F.3d 716, 721 (7th Cir. 2019) ("Pattern instructions are presumed to accurately state the law."). In a case like this one, where a novel legal argument is raised, the argument needs to first be presented to the district court so that the court and the parties have a chance to adjudicate it; only then will an appellate court afford the argument de novo review.

Because Tucker's argument on appeal—a purely legal challenge to a definition contained in a pattern jury instruction—does not qualify as a sufficiency of the evidence challenge under Rule 29, and because he did not otherwise raise the argument before the district court or object to the relevant jury instruction as required under Rule 30, it is forfeited. Fed. R. Crim. P. 51 (explaining the requirements for preserving a claim of error). Our review should therefore only be for plain error under Rule 52(b). *United States v. Leal*, 72 F.4th 262, 265 (7th Cir. 2023) ("[I]f a defendant does not object to a jury instruction, … he may only challenge the instruction for plain error on appeal.").